MILLER, Plaintiff in error, v. STATE, Defendant in error.*

*June 9—June 30, 1967.*

* Motion for rehearing denied, without costs, on September 11, 1967.

780

782

For the plaintiff in error there was a brief and oral argument by *Howard W. Eslien* of Oconto Falls.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William A. Platz,* assistant attorney general.

HANLEY, J. The first issue raised is whether the trial court abused its discretion in denying the defendant's motion for a change of venue, and is there a probability that the defendant received less than a fair trial by an impartial jury?

It is argued that defendant was denied an impartial trial because of a deep-seated pattern of community prejudice engendered by common knowledge of the defendant's character and by adverse pretrial publicity.

Sec. 956.03 (3), Stats., states that a trial court "may" order a change of venue because of community prejudice. The statutory language therein makes it very clear that a motion for change of venue is addressed to the discretion of the trial court; and this court will not interfere unless an abuse of discretion is demonstrated. *State v. Nutley* (1964), 24 Wis. (2d) 527, 129 N. W. (2d) 155, certiorari denied, 380 U. S. 918, 85 Sup. Ct. 912, 13 L. Ed. (2d) 803; *Schroeder v. State* (1936), 222 Wis. 251, 267 N. W. 899; *State v. Smith* (1930), 201 Wis. 8, 229 N. W. 51; and *Krueger v. State* (1920), 171 Wis. 566, 177 N. W. 917.

In the instant case, on November 29, 1962, defendant, upon returning from Winnebago State Hospital, filed an affidavit requesting a change of venue claiming that he could not receive an impartial trial. The record demonstrates that the only evidence presented to the trial court in support of this claim was three copies of local newspapers, the latest of which was published on October 17, 1962.

These articles were not condemned as being inaccurate, even though a quick glance at the stories demonstrates that they contained prejudicial matter. Following the hearing on defendant's motion, on November 30, 1962, the trial court stated as follows:

"The court is not satisfied that the publicity complained of has created community prejudice to the point where it tends to prevent the accused from having a fair and impartial trial in this community. The motion for a change of venue to an adjoining county is, therefore, denied, but without prejudice to a renewal of the motion if it shall appear on the voir dire examination of the jury panel that the accused cannot have a fair and impartial trial in Marinette County."

It is said in *Krueger v. State, supra,* at page 575, that:

"The difficulty of impressing upon the record a true concept of the public sentiment in the county is manifest.

Just as the trial judge is in a better position to weigh the testimony of witnesses who appear before him, so is he in a better position to judge of the public sentiment of the county. He is on the ground and in a position to sense, in a way that this court cannot, the true sentiment of the community and to judge much more correctly whether it is such as to prevent a fair trial on the part of the defendants."

We are of the opinion that the trial court did not abuse its discretion in denying the defendant's motion for change of venue.

The denial of the motion was a conditional denial, allowing a renewal of the motion if the *voir dire* examination of the jury panel demonstrated that the accused could not receive an impartial trial.

The defense did not demonstrate that even one person was adversely affected by the publicity, let alone that the community was so prejudiced that the defendant could not receive an impartial trial.

The *voir dire* was completed in less than half a day. The jury of 12 and one alternate was selected, with apparent ease, from the 42 jurors called. Twenty-four of the prospective jurors were eliminated by peremptory challenges and only five were excused by the court for cause. The *voir dire* in this case was not made part of the record.

In the case of *Bianchi v. State* (1919), 169 Wis. 75, 93, 171 N. W. 639, where "the sentiment in the community was not the best for an impartial trial," the court said:

". . . we cannot say that the trial court abused its discretion by refusing the change conditionally, as it did. The request was not renewed upon going to trial, and it appears the jury was secured in less than a day and only about thirty-seven jurors were examined. The apparent difficulty or ease of securing a jury can be taken

into account in passing upon the alleged abuse of discretion in refusing a change of venue. In view of the probable conditions existing elsewhere than in Milwaukee and the ease with which the jury was secured, we perceive no error in the court's ruling."

Defendant Miller claims that the newspaper articles denied him a fair trial bcause those articles revealed to the public information which was inadmissible in evidence. The defendant is speaking of his record of prior arrests, his statement to the district attorney, and the photographs of the scene of the crimes and the defendant.

We believe the strategy of defense counsel of introducing Miller's past record in evidence and of not objecting to the introduction of the statement and photographs at trial has precluded the defendant from now raising this argument of not receiving a fair trial because of the pretrial publicity.

In *Oseman v. State* (1966), 32 Wis. (2d) 523, 529, 145 N. W. (2d) 766, it is stated:

"The trial court could have concluded that the fact of Dupree's plea of guilty being disclosed in the newspaper article could not have influenced the jurors in view of their having heard and properly so the testimony of various police officers describing Dupree's exit from the tavern through the broken pane of glass in the front door and having been wounded in flight when he failed to heed the officers' warning to stop."

See also *Commodore v. State* (1967), 33 Wis. (2d) 373, 379, 380, 147 N. W. (2d) 283.

There is no evidence that any juror saw the newspaper articles in question. However, even if the articles had been read by the jurors, it did not necessarily deprive the defendant of a fair trial since the information was properly presented to the jury as testimony or exhibits at the trial.

The difficult question in this case is whether or not, even though trial Judge HARRY E. WHITE did not abuse his discretion in refusing to order a change of venue, there was a probability that the defendant was denied due process of law because he failed to receive a fair trial by an impartial jury.

In *Sheppard v. Maxwell* (1966), 384 U. S. 333, 352, 86 Sup. Ct. 1507, 16 L. Ed. (2d) 600, the court in quoting from *Estes v. Texas* (1965), 381 U. S. 532, 85 Sup. Ct. 1628, 14 L. Ed. (2d) 543, said:

" 'It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused. Nevertheless, at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process.' "

It is clear that the court in *Sheppard, supra,* was looking at the totality of circumstances to determine if there was a probability of prejudice raised. The court, although it stated that the cure for adverse publicity lies within certain remedial measures, did not base its reversal solely on the trial court's abuse of discretion in failing to order a change of venue, but it was mainly predicated upon the failure of the state and the trial court to afford Sheppard a fair trial.

The *Sheppard Case, supra,* is based on an extreme set of facts of prejudicial publicity during the trial; and the facts in that case are not comparable to those in the instant case.

The newspaper articles in the instant case, while not quantitatively nor qualitatively similar to those in the *Sheppard Case,* are improper. However, they are not sufficient to warrant a reversal and a new trial. *State v. Nutley, supra; State v. Woodington* (1966), 31 Wis. (2d) 151, 142 N. W. (2d) 810, 143 N. W. (2d) 753;

*State v. Alfonsi* (1967), 33 Wis. (2d) 469, 147 N. W. (2d) 550.

In the instant case we have the additional fact that the defense introduced the questionable evidence, such as the previous criminal record and raised no objection to the introduction of matters referred to in the pretrial publicity.

We think the defendant did receive a fair trial before an impartial jury. He was convicted only because of the overwhelming testimony produced by the state.

The defendant's second argument alleges that he was denied his constitutional right to the assistance of counsel and that the trial court improperly admitted oral and written statements into evidence. There is no merit to either contention.

Defendant, at the initial appearance, asked that counsel be appointed. Counsel was appointed for him prior to the time of the preliminary hearing at public expense.

There was complete compliance with all federal and state constitutional requirements in respect to the right to counsel as it existed at that time. *Gideon v. Wainwright* (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. (2d) 799; *White v. Maryland* (1963), 373 U. S. 59, 83 Sup. Ct. 1050, 10 L. Ed. (2d) 193; *State ex rel. Offerdahl v. State* (1962), 17 Wis. (2d) 334, 116 N. W. (2d) 809.

Insofar as the oral and written statements of the defendant are concerned, defendant relies on the cases of *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. (2d) 977, and *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. (2d) 694, 10 A. L. R. (3d) 974. These cases do not apply.

*Escobedo* applies only to trials commencing after June 22, 1964. See *Browne v. State* (1964), 24 Wis. (2d) 491, 129 N. W. (2d) 175, 131 N. W. (2d) 169, certiorari denied, 379 U. S. 1004, 85 Sup. Ct. 730, 13 L. Ed. (2d) 706; *Holloway v. State* (1966), 32 Wis. (2d) 559, 146 N. W. (2d) 441.

*Miranda, supra,* applies only to trials commenced after June 13, 1966. See *Johnson v. New Jersey* (1966), 384 U. S. 719, 86 Sup. Ct. 1772, 16 L. Ed. (2d) 882; *Reimers v. State* (1966), 31 Wis. (2d) 457, 143 N. W. (2d) 525.

Also, it must be remembered that defendant's statements were placed in evidence without objection.

The defendant's final contention is that he should be granted a new trial in the interest of justice because on the basis of hindsight his defense attorney might have done things differently. One of these things referred to was the introduction of defendant's testimony enumerating his own prior criminal record. The introduction of defendant's criminal record in this case apparently was a defense tactic to inform the jury of his previous confinement in Winnebago State Hospital.

This court, in *Le Barron v. State* (1966), 32 Wis. (2d) 294, 302, 303, 145 N. W. (2d) 79, said:

"Defendant now criticizes trial counsel for persisting in the insanity and feebleminded defense and introducing the foregoing prejudicial evidence in the record in furtherance of that defense in face of the overwhelming evidence that defendant was sane and not feebleminded. . . .

". . . As noted in *Pulaski v. State,* 'Often after trial, charges of incompetency are directed toward counsel because it appears other tactics than those chosen might have been more helpful to the accused.' This seems to be just such an objection to a tactic, and, even assuming that defendant's present view of tactics is the correct one, it would not seem, in light of the trial counsel's total performance, to satisfy the test of inadequacy, that this court has laid down, viz., 'Unless the representation of counsel is so inadequate and of such low competency as to amount to no representation, a new trial cannot be granted on that ground.'

"Furthermore, there would seem to be arguable merit in the trial counsel's tactic. . . . Under these circumstances, trial counsel might have found himself criticized by later appellate counsel if he had not done everything in his power to get an insanity acquittal."

We conclude that there was no miscarriage of justice. The state clearly proved the defendant guilty beyond a reasonable doubt.

*By the Court.*—Judgment affirmed.

BEILFUSS, J., took no part.